IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-03000-RBJ

PATRICE STEPHENSON-LICCIARDI, as legal representative of CHRISTIAN LICCIARDI, an individual,

    Plaintiff,

v.

WILLIAM COOPER, an individual,
STEVEN HAKE, an individual,
CLAUD BAYS, an individual, and
MICHAEL BONNET, an individual,

    Defendants.

---

ORDER on PLAINTIFF'S MOTION FOR NEW TRIAL and HER OBJECTION TO AWARD OF COSTS

---

Plaintiff moves for a new trial (ECF No. 289), arguing that the clear weight of the evidence required a plaintiff's verdict, and that the Court should not have admitted evidence of a lawsuit plaintiff filed in California. ECF No. 289. The Court has reviewed the motion, the responses (ECF Nos. 296 and 297) and plaintiff's consolidated reply. ECF No. 301. The motion for a new trial is denied. Plaintiff also moves for a review of the Clerk's taxation of costs in favor of defendant Hake, essentially an objection to that award. The motion is granted to the extent that I have reviewed the award but otherwise is denied.

## BACKGROUND

This is a medical malpractice case filed on behalf of Christian Licciardi. Plaintiff claims that on November 2, 2015, when Christian was a student at Adams State University in Alamosa,

1

Colorado, he went to the emergency room at the San Luis Valley Regional Medical Center with complaints of headache and nausea. This was followed by additional visits on November 3, 4, 8, 9, and 10-11 (when he was admitted to and discharged from the hospital). During those visits he was seen by one or more emergency room doctors, a neurologist, and a physician's assistant; CT and MRI scans were obtained; and radiologists, including a tele-radiologist, read and interpreted the scans. He was also seen by a nurse practitioner in another clinic, Valley-Wide Health Systems, Inc., on November 9, 16 and 19, 2015. The parties dispute whether Christian was suffering from uncomplicated sinusitis at that time or a more serious condition.

Following his last visit to Valley-Wide Christian seemed to be doing better, and on November 25, 2015 he drove to California to visit his family during the Thanksgiving holiday. However, while in California he experienced severe symptoms that led to visits to the Loma Linda University Medical Center on November 27 and 29, 2015. During his second visit he was diagnosed with a life-threatening condition called a subdural empyema which required emergency brain surgery. Following that surgery Christian has been left with permanent brain damage and severe neurological deficits.

Plaintiff's contention was that Christian developed complicated sinusitis in Colorado. This evolved while he was still in Colorado into one or two intracranial abscesses, but that his illness was misdiagnosed and mistreated. Plaintiff contended that an MRI with contrast should have been performed, and had that happened, his condition would have been detected and treated such that the catastrophic consequences he ultimately suffered would not have happened. Plaintiff further contended that his condition worsened in California and was, again, not initially diagnosed or treated properly. Essentially, plaintiff's claim is that Christian suffered from a continuum of sub-standard medical care that begin in Colorado and continued in California.

2

Plaintiff, initially Christian but later his mother as his legal representative, wished to pursue one medical negligence case against all the health care professionals who provided substandard care, either in Colorado or California, but the defendants in the two states would not agree. Therefore, plaintiff filed separate lawsuits against the local defendants in each state.

The Colorado defendants denied that Christian had an empyema or any other intracranial abscess in Colorado. They contended that he was properly diagnosed and treated for uncomplicated sinusitis and recovered. In California he became ill a second time, this time an illness that quickly developed into an intracranial abscess, and the craniotomy resulted.

The Colorado case was tried to a jury September 10-14, 17-20, and 24-27, 2018. By that time the defendants had been reduced to five: Claud Bays, M.D., a hospitalist; Michael Bonnet, P.A., a physician's assistant; William Cooper, M.D., a neurologist; Steven Hake, M.D., a radiologist; and Kyle Phillips, a nurse practitioner. The plaintiff dropped her claim against Mr. Phillips near the end of the trial. Ultimately, the jury rendered its verdict in favor of all four remaining defendants. ECF No. 250 (verdict, juror names redacted). The Court entered its Final Judgment in favor of the defendants on October 1, 2018. ECF No. 252.

The Final Judgment included an award of costs to the defendants as the prevailing parties, to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. Defendants Bays, Bonnet and Cooper collectively submitted a proposed bill of costs totaling $234,412.82. ECF No. 255. The plaintiff and defendants Bays, Bonnet and Cooper stipulated to an award of costs to those defendants in the reduced amount of $80,000. ECF No. 289. The Clerk taxed costs against the plaintiff and in favor of defendant Hake in the amount of $77,730.07. ECF No. 304. Plaintiff has objected, arguing that costs cannot be taxed against a legal representative. ECF No. 305.

## STANDARD OF REVIEW

"A district court has broad discretion in deciding whether to grant a motion for a new trial." *Harvey by & through Harvey v. Gen. Motors Corp.,* 873 F.2d 1343, 1346 (10th Cir.1989). However, it is the function of the jury, not the court, to resolve conflicts in the evidence. *Veile v. Martinson*, 258 F.3d 1180, 1190-91 (10th Cir. 2001). "If 'a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *M.D.Mark, Inc. v. Kerr-McGee Corp.,* 565 F.3d 753, 762 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1284 (10th Cir.1999) (internal quotation marks and citations in *Anaeme* omitted)). The burden of proof is on the moving party. *Domann v. Vigil,* 261 F.3d 980, 983 (10th Cir.2001). The Court considers the record evidence in the light most favorable to the nonmoving party. *Anaeme,* 164 F.3d at 1284.

On timely motion, the district court may review the clerk's taxation of costs. Fed. R. Civ. P. (d)(1). The review is de novo. *See In re Williams Securities Litigation-WCG Subclass,* 558 F.3d 1144, 1147 (10th Cir. 2009).

## ANALYSIS AND CONCLUSIONS

**A. Motion for a New Trial – Weight of the Evidence.**

1. The issue.

There can be no dispute that Christian Licciardi's ultimate outcome was tragic, and that he and his family suffered a horrendous loss. The issues were whether one or more of the defendants provided substandard care, and if so, whether the negligence was a cause of Cristian's injuries and losses.

2. Expert testimony – the witnesses.

The medical evidence was complicated and hotly disputed. In support of the liability claims, plaintiff called (1) Dr. Gary Press, a diagnostic radiologist; (2) Dr. Edward Hepworth, an otorhinolaryngologist (ear, nose and throat surgeon); (3) Dr. Wendy Gill, an infectious disease specialist; (4) Dr. William Simonson, a clinical consulting pharmacist; (5) Dr. Adam Wolff, a neurologist; (6) Jan McGinnis, the imaging director at the San Luis Valley Regional Medical Center; and (7) Luciann Rosen, a nurse practitioner. With the exception of Ms. McGinnis these were retained experts.

Defendant Hake countered with (1) Dr. Clint Anderson, a diagnostic radiologist; (2) Dr. Peter Hwang, an otorhinolaryngologist; (3) Dr. Hake, a radiologist; and (4) Dr. Peter Leroux, a neurosurgeon. Defendants Bays, Bonnet and Cooper called (1) Dr. Keith Armitage, an infectious disease specialist; (2) Dr. John Greenlee, a neurologist; (3) Dr. Joshua Visitacion, an emergency room doctor at the San Luis Valley Regional Medical Center; (4) Dr. Jeffrey Rothschild, an internal medicine and critical care specialist; (5) Dr. Bays, an internal medicine specialist and hospitalist; (6) Mr. Bonnet, a physician's assistant; (7) Dr. Cooper, a neurologist; (8) Kyle Phillips, a nurse practitioner; and (9) Dr. Douglas Fish, a pharmacist. Of the combined 13 medical experts on the defense side, seven were retained experts; one was a physician at the hospital who was not named a defendant; and five were the defendants themselves.

3. Expert testimony – the evidence.

I will consider the evidence in three categories: (1) radiology (defendant Dr. Hake); (2) hospitalists (defendants Dr. Bays and P.A. Bonnet); and (3) neurology (defendant Dr. Cooper). I will not attempt to discuss all the medical testimony presented in a three-week trial. Rather, I

will discuss examples that, in my judgment, make the point that there was substantial and disputed evidence on both sides.

    *a. Radiology.*

The first question was what illness Christian was suffering from when he presented to the various health care professionals in Colorado. This turned not only on his clinical presentation but also, significantly, on interpretation of CT and MRI images or scans. Relying on the testimony of Dr. Press, a retained diagnostic radiologist, plaintiff contended that Dr. Hake failed to recognize and report an abscess or abscesses that he should have seen in the November 11, 2015 MRI scan. ECF No. 289 at 5. Dr. Press focused on two objects visible in various perspectives and images in that scan, sometimes referring to them for simplicity as "Big Brother" and "Little Brother." During the trial those labels, but also simply "two white dots," were frequently used by Dr. Press and other doctors who interpreted the images. In Dr. Press's opinion they were an intracranial abscess or two intracranial abscesses. Dr. Press believes that Dr. Hake missed this diagnosis by improperly reading and comparing the images. *See id.* at 6-11 (images and plaintiff's analysis of same). Dr. Press was well qualified to interpret such images.

However, Dr. Press was not the only well-qualified doctor to interpret the images. In Dr. Hake's response brief counsel points first to the testimony of Dr. Adam Wolff, a neurologist retained by the plaintiff, who testified during his deposition, when first shown the images as opposed to Dr. Press's report, that the two white dots on the November 11, 2015 MRI were at the top or a little above the top of the frontal sinus. ECF No. 296 at 6 (citing trial transcript, ECF No. 280, at 1089). That would mean that they were extracranial, not intracranial. Perhaps more importantly, Dr. Hake points to the testimony of Dr. Anderson, a diagnostic radiologist, who testified that Dr. Hake's reading of and report on the November 11, 2015 MRI was reasonable

6

and appropriate; that he, Dr. Anderson, did not himself appreciate the two objects when he first reviewed the scans; that once they were pointed out to him, and he viewed multiple images, his opinion was that they were extracranial, not intracranial, and that they represented the tops of the frontal sinuses with mucus in them. Dr. Anderson testified that, in his opinion, nothing in the images from November 4, 10 or 11, 2015 showed a subdural empyema or intracranial abscess. *Id.* at 7-8. Dr. Hake also cites testimony of Dr. Hwang, an ENT specialist and professor retained by the defense, that the two white dots show sinusitis in the frontal sinuses, not an intracranial infection. *Id.* at 9. Counsel points out that during cross-examination Dr. Press acknowledged that a software system he used to study the images put the two objects in the frontal sinuses, not in an intracranial space, but Dr. Press called this an error in the software that he was able to correct by using medical experience and judgment. *Id.* at 6-7. Finally, the brief cites Dr. Hake's own testimony that the standard of care requires comparison of images "as necessary and appropriate;" and in this case because the prior reports were normal he did not need to go back and review the actual films. *Id.* at 10-11.

    b. *Hospitalists.*

Plaintiff claimed that the standard of care to rule out an intracranial abscess is to perform an MRI with contrast. That was undisputed, and it was also undisputed that neither Dr. Bays nor P.A. Bonnet ordered a contrast scan Christian's overnight hospitalization November 10-11, 2015. ECF No. 289 at 15-16. The question, though, was whether there was a sufficient indication of a possible intracranial abscess to warrant a contrast scan. Plaintiff cites the testimony of Dr. Wolff, the neurologist, that "if a scan with contrast had been done, we would not be here today." *Id.* at 16. Plaintiff also points out that administration of the drug Decadron

7

in the hospital contributed to Christian's feeling better, but that simply masked what was occurring and did not excuse the failure to perform contrasted imaging. *Id.*

Dr. Bays and Dr. Bonnet, on the other hand, respond that the images that were obtained showed frontal sinusitis, not an intracranial abscess or infection (citing specific testimony of Dr. Hwang, Dr. Anderson, and Dr. LeRoux, the neurosurgeon). ECF No. 297 at 5. In addition, while Christian was in Colorado his clinical picture was inconsistent with an intracranial epidural abscess (citing specific testimony of Dr. Armitage, an infectious disease specialist; Dr. LeRoux; Dr. Greenlee, a neurologist; and the defendants Cooper, Bays and Bonnet themselves). *Id.* at 7-10. Defendants' position was that given the imaging that was done and Christian's clinical presentation, there was no indication of a possible intracranial infection or abscess that would require a scan with contrast.[1]

   c. *Neurology.*

Plaintiff's motion does not focus in particular on Dr. Cooper. Plaintiff suggests that if Dr. Hake had identified forehead swelling, "the jury would have questioned Dr. William Cooper, Dr. Claud Bays, and Michael Bonnet's decision for releasing Christian without further investigation as to its cause." ECF No. 289 at 7, 8. That is speculation, and in any event, it is another complaint about Dr. Hake, not the other three defendants.

Primarily, Dr. Cooper is included with Dr. Bays and P.A. Bonnet as having failed to meet the standard of care that required a contrast MRI to rule out an intracranial abscess. But, as I noted above, there was evidence, including from Dr. Wolff, a neurologist, that the radiology did not suggest the possibility of an intracranial abscess. Dr. Press certainly disagreed, but he was

---

[1] Nurse practitioner Phillips, who was a defendant until plaintiff dismissed her claims against him late in the trial, did recommend after Christian's first visit to the Valley-Wide clinic, that an MRI with contrast be done. It was not entirely clear why this recommendation was not accepted at the hospital, but neither Dr. Cooper nor any other health care professional there believed that a contrast scan was indicated.

8

not the only source of testimony. There was also evidence, as I have noted, that Christian's clinical presentation was such that including an intracranial abscess in the differential diagnosis was not indicated.

    4. Conclusion.

The Court may not grant a new trial based on a claim that the verdict was not supported by the evidence unless it finds that the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D.Mark,* 565 F.3d at 762. This is so even if the Court might have resolved conflicts in the evidence differently. Here I find that there was substantial and conflicting evidence on virtually every medical issue. Accordingly, to the extent that plaintiff's motion is based on what she considers to have been the "clear weight of the evidence," I respectfully disagree and deny the motion.

    **B. Motion for a New Trial – Evidence of the California Lawsuit.**

As noted above, the plaintiff, believing that Christian was the victim of negligence by health care professionals in California and Colorado, filed separate medical malpractice lawsuits in both states. The defendants designated Dr. Spicer (one of the California treating physicians) and the Loma Linda University Medical Center as non-parties at fault pursuant to Colo. Rev. Stat. § 13-21-111.5(3)(b). ECF No. 164.

At trial both sides wanted the jury to hear about Christian's diagnosis and treatment in California -- the plaintiff to show the catastrophic outcome he experienced which supported his damages claims, and the defendant to distinguish the diagnosis in California from Christian's presentation in Colorado. The plaintiff, however, did not want the jury to know that she was accusing the California doctors of malpractice. The defendants, on the other hand, hoped that the jury would apportion some or all of the fault, if fault were found, to the California defendants.

9

The issue was discussed among the Court and counsel on several occasions, before and during trial, and the Court's rulings are chronicled in defendant Hake's response brief, ECF No. 296 at 18-22. As indicated there, the Court took judicial notice of the complaint plaintiff filed in California. My view was, and still is, that the jury deserved to know what plaintiff was alleging in California to avoid the misleading impression that the plaintiff's claims of malpractice were directed solely against the Colorado defendants. However, I did not permit the defendants to piggyback on the expert testimony plaintiff had obtained for the California case (none of which came from plaintiff's Colorado experts), and because the defendants had no evidence of their own that any doctor or hospital in California was negligent, I did not permit the defendants to present their non-party at fault claim.

Plaintiff argues that introduction of her California complaint in the Colorado case might have confused the jury, either causing the jury to infer that plaintiff was seeking damages against the California physicians for the negligence committed in Colorado or that the Colorado claims were inconsistent with the California claims. Plaintiff's fear of jury confusion is a matter of speculation, but in any event, I offered to give the jury a specific instruction concerning the California matter. I stated,

> And if I have to explain that to the jury, I will do that, because I'm really big on explaining things to the jury. You've seen that already in this trial. I don't want them to be deceived about anything. They don't deserve that. If we have to get into that, I'm perfectly willing to say I took judicial notice of the plaintiff's complaint in California, but that's a complaint. Nothing has been proved. They'll have their own trial out there. But there's no evidence in the record of this case that anyone in California did anything wrong at all, so you can't be thinking about should we do something because maybe they were negligent. I'll say that to them. If that's where you guys want me to steer it, I'll do it.

Transcript, ECF No. 285 at 215 (Tr. p. 2303). Neither side took me up on that, nor did the plaintiff suggest any alternative instruction.

That was my judgment at the time, and it still is. Moreover, I do not find any likelihood that any of the discussion of the California case prejudiced the plaintiff at all. Simply put, the jury found that plaintiff did not prove that any Colorado defendant was negligent.

**C. Plaintiff's Motion for Review of the Clerk's Taxation of Costs.**

This lawsuit was filed solely in Christian's name. Several months later plaintiff moved for, and the Court granted, the appointment of Ms. Stephenson-Licciardi to act as Christian's "legal representative" pursuant to Colo. Rev. Stat. 13-81-101.5 and 13-81-102. Ms. Stephenson-Licciardi continued as Christian's legal representative thereafter. Because defendants Bays, Bonnet, Cooper and Hake were the prevailing parties at trial, I awarded costs in their favor and against plaintiff pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Plaintiff now objects to the Clerk's taxation of costs in favor of defendant Hake in the amount of $77,730.02 on grounds that costs cannot be taxed against a legal representative under Colo. Rev. Stat. § 13-16-105. Inconsistently, the plaintiff stipulated to an award of $80,000 in costs against her in favor of defendants Bays, Bonnet and Cooper. Inconsistency aside, I do not agree with plaintiff's argument.

Colo. Rev. Stat. § 13-16-105 provides, in pertinent part,

> If any person sues in any court of record in this state in any action in wherein the plaintiff or demandant might have costs in case judgment is given for him and . . . a verdict is passed against him, then the defendant shall have judgment to recover his costs against the plaintiff, *except against executors or administrators prosecuting in the right of their testator or intestate*, or demandant, to be taxed; and the same shall be recovered of the plaintiff or demandant, by like process as the plaintiff or demandant might have had against the defendant, in case judgment has been given for the plaintiff or demandant.

For several reasons the Court finds that the statute does not insulate the plaintiff from the award of costs in this case. First, 28 U.S.C. § 1920 provides that a judge or clerk of court may tax costs within six listed categories, and Rule 54(d)(1) provides that "[u]nless a federal statute,

11

these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Accordingly, I conclude that the state statute is probably preempted insofar as costs were awarded within the federally prescribed categories. *See Garcia v. Wal-Mart Stores, Inc.,* 209 F.3d 1170, 1176-77(10th Cir. 2000).

Second, the state statute applies to executors and administrators prosecuting in the right of their testator or intestate, not to a parent acting as a legal representative on behalf of her child. The state case cited by plaintiff does not support her argument. It was a medical malpractice case won by the defendants. The state court declined to impose costs on the plaintiff's legal guardian, who had no role in the filing of the case but had a fiduciary duty to prosecute it. *Sara Howard, as legal guardian of Mina Hemati, aka Mina Beall v. Royce Solano, M.D., et al.,* No. 2014cv 31351 (El Paso County District Court July 14, 2016). The Court interpreted the statute as sheltering court-appointed conservators and guardians from a judgment for costs but distinguished cases where a parent brings a lawsuit as next friend on behalf of a child. ECF No. 307-2 at 3. Here, Ms. Stephenson-Licciardi was actively involved in the prosecution of the case from the outset, including with respect to discovery issues, other pretrial issues, and throughout the trial. Her role was analogous to a parent acting as next friend on behalf of her child.

Third, if costs cannot be awarded against Ms. Stephenson-Licciardi, then the alternative is to award them against Christian. That is what the state court did in the El Paso County case, awarding $80,977.82 in costs against Ms. Beall only. ECF No. 307-1. Ms. Stephenson-Licciardi has not advocated for that result here.

Finally, I reviewed de novo the categories and amounts of costs taxed by the Clerk. The categories were appropriate under 28 U.S.C. § 1920. I also found no basis to question or dispute the amounts awarded which were supported and to which plaintiff did not object. Her objection

was to defendant Hake's entitlement to any award of costs against her, not to the specific costs awarded.

**ORDER**

For the reasons set forth above,

1. Plaintiff's motion for a new trial, ECF No. 289, is DENIED.

2. Plaintiff's motion to review taxation of costs, ECF No. 305, is GRANTED IN PART AND DENIED IN PART. The motion is granted to the extent that I have conducted a review but is otherwise denied.

DATED this 1st day of May, 2019.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge